UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BOBBY PARKER | * | CIVIL ACTION |
| VERSUS | * | NO. 25-1362 |
| SUSAN HUTSON, SHERIFF | * | SECTION "L" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Bobby Parker is a prisoner currently incarcerated at Rayburn Correctional Center in Angie, Louisiana. ECF No. 4, ¶III, at 3. He filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Susan Hutson alleging insufficient staffing overnight, during which he was attacked by his roommate, and failure to provide necessary medical care after the attack. *Id.* at 1, 4; *see also* ECF No. 4-2 at 3, 5.

This matter was referred to the undersigned magistrate judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); E.D. La. LR 73.2(A). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.   BACKGROUND

#### A.   Factual Allegations

In his Complaint, Plaintiff alleges that, while he was asleep in the early morning (between 1:15 a.m. – 1:30 a.m.) on August 6, 2024, his roommate began to beat him in the face with a hard tray. ECF No. 4 at 4-5. Plaintiff alleges that there had been no deputy on the pod since 6:30 p.m. roll call, and he "beat down and kickdown" for almost half an hour before Capt. Powell appeared to find Plaintiff injured. *Id.*; *see also* ECF No. 4-2 at 3. After taking his roommate to the hole, Capt. Powell brought Plaintiff to medical where a nurse placed tape on the wound after washing and cleaning it. ECF No. 4 at 4-5. Although the nurse indicated that Plaintiff would need to go to

1

the hospital for stiches after seeing the doctor in the morning, approximately two or three hours later, Plaintiff was transferred. *Id.*; ECF No. 4-2 at 5.

Upon arrival at RLCC (presumably Raymond Laborde Correctional Center), Plaintiff reported his head pain but was not treated. ECF No. 4 at 5; ECF No. 4-2 at 5. Plaintiff alleges that he was not treated at RLCC, and instead, was transferred to B.B. Rayburn Correctional Center where, despite his continued complaints of head pain, he has not been treated. ECF No. 4 at 5; ECF No. 4-2 at 5.

Plaintiff requests $500,000 in compensatory damages and wants the Sheriff removed from office because too many inmates have been hurt and she does not have enough male officers working there. ECF No. 4, ¶V, at 6. Plaintiff does not name any correctional officer or medical provider associated with the Orleans Parish Justice Center, RLCC, or Rayburn. Rather, he names only Orleans Parish Sheriff Susan Hutson as a defendant.

## II.    LEGAL STANDARD

### A. Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[1] The court must dismiss an *in forma pauperis* § 1983 complaint if, upon review, it is frivolous and/or fails to state a claim.[2] A claim is frivolous if it "lacks an arguable basis in law or fact."[3] A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if

---

[1] 28 U.S.C. §§ 1915A, 1915(e)(2)(B); *Martin v. Scott*, 156 F. 3d 578, 579-80 (5th Cir. 1998).
[2] *See, e.g.,* 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F.3d at 579–80.
[3] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327).

the complaint alleges the violation of a legal interest which clearly does not exist."[4] A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[5] A court may not dismiss a claim simply because the facts are "unlikely."[6]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[7] The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.[8] The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[9]

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[10] Thus, the court should assume the veracity of all well-pleaded allegations and view them in the light

---

[4] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[5] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).
[6] *Id.*
[7] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[8] *Walch v. Adjutant Gen.'s Dept.*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).
[9] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quoting *Bell Atl. Corp.*, 550 U.S. at 544).
[10] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Off.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 n.10 (5th Cir. 2017)).

most favorable to the plaintiff and then determine whether they plausibly give rise to an entitlement to relief.'"[11]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Rule 12(b)(6), the Supreme Court held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[12] If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[13] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[14]

### B. Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[15]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[16]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;
(2) that occurred under color of state law; and

---

[11] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[12] *Neitzke*, 490 U.S. at 319; *Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).
[13] *Id*.
[14] *Id.*
[15] 42 U.S.C. § 1983.
[16] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

(3)    was caused by a state actor.[17]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[18] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[19] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[20]

### C. Cruel and Unusual Punishment

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbid conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'"[21] Prisoners may bring constitutional challenges as an attack on a "condition of confinement" or as an "episodic act or omission."[22]

#### 1. Conditions of Confinement

An inmate's "challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'"[23] Some typical examples of condition-of-confinement cases include challenges to prison overcrowding, mattresses on floors, restrictions

---

[17] *Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004) (citation omitted).
[18] *Harrington v. Harris*, 118 F. 3d 359, 365 (5th Cir. 1997) (citation omitted).
[19] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).
[20] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); accord *Thibodeaux v. Bordelon*, 740 F. 2d 329, 333 (5th Cir. 1984).
[21] *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted); *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994); *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) and *Farmer*, 511 U.S. at 832); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (The "official conduct must be 'wanton,' which is defined to mean 'reckless.'").
[22] *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009); *see also Reed*, 795 F.3d at 464 ("[T]here is no rule barring a plaintiff from pleading both alternative theories[.]").
[23] *Id*. at 463 (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996)).

5

on inmate privileges, and disciplinary segregation with limited time out of the cell.[24] A true jail condition case starts with the assumption that the State intended to cause the constitutional deprivation.[25]

To recover for conditions resulting from policies intentionally creating unconstitutional conditions, whether that intent is actual or presumed, the plaintiff must allege that the conditions complained of were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."[26]

### 2. Episodic Act-or-Omission

For an episodic-act-or-omission claim, "the complained-of harm is a particular act or omission of one or more officials."[27] A plaintiff in an episodic-act-or-omission case "complains first of a particular act of, or omission by, the actor," and may also "point[] derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."[28] Individual liability in an episodic-act-or-omission case requires the plaintiff to establish that the defendant acted with subjective deliberate indifference.[29] To impose official capacity liability in an episodic event claim (and thus hold a municipality accountable for the constitutional violation), the plaintiff must establish that "the municipal employee's act resulted from a municipal policy or

---

[24] *See Scott v. Moore*, 114 F.3d 51, 53 & n.2 (5th Cir. 1997).
[25] *Hare*, 74 F.3d at 644-45.
[26] *Hare*, 74 F.3d at 645. "The Fifth Circuit has at least suggested that condition-of-confinement claims are cognizable against individual actors only in their official capacities." *Nagle v. Gusman*, No. 12-1910, 2016 WL 768588, at *5 (E.D. La. Feb. 26, 2016) (collecting cases).
[27] *Scott*, 114 F.3d at 53.
[28] *Id.*
[29] *Id.*

6

custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights."[30]

### III.   APPLICABLE LAW AND ANALYSIS

#### A.   Failure to State a Claim

Construed broadly, based on his factual allegations, it appears as though Plaintiff seeks to assert a claim for failure to protect, inadequate staffing, and/or medical indifference against defendant Sheriff Susan Hutson.  Plaintiff does not clearly indicate whether he seeks to name Sheriff Hutson in her individual or official capacity.

Because supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under §1983,[31] Plaintiff must allege that Sheriff Hutson was personally involved in the alleged misconduct.  Otherwise, to impose §1983 liability on an official not personally involved in the alleged misconduct, the official must have implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[32]  Therefore, for a plaintiff to allege liability on the part of supervisory officials, he must adequately plead facts to establish either that (1) the official "participated in acts that caused constitutional deprivation" or (2) "implemented unconstitutional policies causally related to his injuries."[33]

---

[30] *Scott*, 114 F.3d at 54; *see also Sibley v. Lemaire*, 184 F.3d 481, 488 (5th Cir. 1999) (requiring plaintiff to show objective deliberate indifference "[t]o hold superiors liable").  Objective indifference "considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Corley v. Prator*, 290 F. App'x 749, 750 (5th Cir. 2008) (citing *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002)).
[31] *Leal v. Wiles*, 734 F. App'x 905, 907 (5th Cir. 2018) (citing *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)).
[32] *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal quotation marks omitted).
[33] *Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025) (citing *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017)).

### 1. Individual Capacity

A plaintiff suing governmental officials in their individual capacities must allege specific conduct giving rise to a constitutional violation.[34] "Personal involvement is an essential element of a civil rights cause of action."[35] Plaintiff does not allege any personal involvement by Sheriff Hutson in monitoring the dorms overnight when he was assaulted or in his subsequent treatment.

### 2. Official Capacity

Official capacity suits are viewed as "another way of pleading an action against an entity of which an officer is an agent."[36] Because Sheriffs are the keepers of parish jails and the final policymakers with respect to jail management, Sheriff Hutson in her official capacity would qualify as a "policymaker" for purposes of § 1983 liability. To hold a governmental entity liable based on an official-capacity claim in a § 1983 lawsuit, the federal violation at issue must have resulted from a "policy or custom" of that governmental entity.[37]

Courts define an official policy as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] or by an official to whom the [entity] ha[s] delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy. Actual or constructive knowledge of such custom must be attributable to the [entity] or to an official to whom that body ha[s] delegated policy-making authority.[38] Proof of a custom or practice requires more than a showing of isolated acts.[39]

A municipality is liable under § 1983 "only where it 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,' or

---

[34] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).
[35] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).
[36] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).
[37] *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).
[38] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam); *see also Belcher*, 492 F. Supp. 3d at 652-53 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).
[39] *Leal*, 734 F. App'x at 908 (citing *Burge*, 336 F.3d at 370).

where 'constitutional deprivations [occurred] pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels.'"[40]

"Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference."[41]  And a plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[42]  Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.[43]

To state a § 1983 supervisory liability claim for failure to train, a plaintiff must allege that the supervisor failed to train/supervise the officers involved, a causal connection between the alleged failure to supervise/train and the alleged constitutional violation, and the failure to train/supervise constituted deliberate indifference to plaintiff's constitutional rights.[44]  A plaintiff asserting an "inadequate training" claim must allege with specificity how a particular training program is defective.[45]  And the "deliberate indifference" prong generally requires "a plaintiff to demonstrate 'at least a pattern of similar violations' arising from training [or supervision] that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'"[46]

---

[40] *Collins v. City of Harker Heights*, 916 F.2d 284, 286 (5th Cir. 1990) (alteration in original) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).
[41] *Johnson v. Gusman,* No. 18-11900, 2020 WL 307662, *7 (E.D. La. June 10, 2029) (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)).
[42] *Colle v. Brazos County, Tex.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09–7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).
[43] *See, e.g.*, *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.
[44] *Id.* (citing *Cozzo v. Tangipahoa Par. Council–President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002) (quoting *Thompson*, 245 F.3d at 459)).
[45] *Id.* (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005))).
[46] *Id.* (citing *Burge*, 336 F.3d at 370 (quoting *Thompson*, 245 F.3d at 459)).

Similarly, to state a supervisory liability claim under § 1983 for understaffing, a plaintiff must plead that there was a policy at the jail, promulgated or implemented by the policy making official, of deliberate indifference to the risk of under-staffing and that this policy caused his injury.[47] Evidence of understaffing, without more, is not proof of official policy.[48] Rather, evidence of under-staffing would become proof of an official policy "only if more complete [ ] staffing were possible and it was the deliberate intent of the policy making official not to adequately [ ] staff the jail, having in mind a gross indifference to the medical needs of the pretrial detainees."[49]

In this case, a broad reading of Plaintiff's Complaint suggests that he alleges that Sheriff Hutson inadequately staffed the facility or failed to train staff to properly monitor the pods overnight, and that she hired too many women. ECF No. 4 at 4-6; ECF No. 4-2 at 3, 5. Plaintiff fails, however, to identify any policy or allege any facts to suggest that his injury from his roommate's attack was due to an identified policy. Rather, Plaintiff appears to rely on an inference that an inadequate policy existed based on nothing other than the fact that harm resulted to him, which is insufficient to support a plausible claim for supervisory liability.[50]

Even with the broadest reading of the *pro se* complaint, Plaintiff has failed to identify any policy or custom related to understaffing or training in violation of his constitutional rights as necessary to state a claim against Sheriff Hutson in her official capacity.

---

[47] *Payton v. CEO, Corrections Corp. of America*, 2015 WL 52104, at *3 (W.D. La. Jan. 2, 2015).
[48] *Id.* (citing *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. Oct. 19, 1987) ("Nor can plaintiffs general and conclusory allegations of [ ] inadequate staffing support a section 1983 action ... Mere understaffing, without more, is not proof of an official policy.").
[49] *Id.*
[50] *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

B.     **Failure to Protect**

"The Eighth Amendment affords prisoners protection against injury at the hands of other inmates."[51]  To state a § 1983 failure-to-protect claim, plaintiff must allege that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection."[52]  Deliberate indifference is the standard of review when prisoners claim the failure to protect.[53]  To satisfy the deliberate indifference element, the plaintiff must allege that the defendants "(1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed."[54]  Thus, plaintiff must allege that the official not only knew of and disregarded an excessive risk to inmate health or safety but that he also drew that inference.[55]

An inmate pursuing a claim for failure to protect may prove it by showing that the defendants knew of a specific threat to him but failed to take measures to protect him from it.[56]  In the absence of a specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns."[57]  This situation arises in a jail or prison where officials allow "a pervasive risk of harm" and "fail[ ] to take reasonable steps to prevent the known risk."[58]  "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for

---

[51] *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted).
[52] *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)).
[53] *Johnson*, 786 F. 2d at 1260.
[54] *Rogers v. Boatright*, 709 F.3d 403, 407-08 (5th Cir. 2013).
[55] *Farmer*, 511 U.S. at 837.
[56] *Id*. at 843.
[57] *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), *overruled on other grounds by International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Carp.*, 790 F.2d 1174 (5th Cir. 1986).
[58] *Stokes v. Delcambre*, 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape).

reasons personal to him or because all prisoners in his situation face such a risk."[59] However, negligence on the part of the prison officials does not rise to the level of a § 1983 claim for deliberate indifference; nor does an official's failure to alleviate a significant risk that he should have perceived, but did not.[60]

Plaintiff alleges no facts to suggest that he had any conflicts with his roommate or that he reported any concerns about his roommate to anyone, much less Sheriff Hutson. Plaintiff includes no allegations to suggest that Sheriff Hutson was aware of facts from which she could infer that there was an excessive risk to Plaintiff's safety.[61] At best, he alleges inadequate staffing (discussed below), but has not alleged that any defendant was aware of facts giving rise to an inference that a substantial risk of serious harm to existed and that any defendant drew such an inference. Nor has he alleged that he was placed in an environment "where terror reigns."

Accordingly, Plaintiff's allegations simply do not rise to the level of a plausible § 1983 failure to protect claim.

### C. Inadequate Medical Care

The Eighth Amendment deliberate indifference standard also applies to claims of inadequate medical care.[62] A plaintiff must allege both that he faced "objective exposure to a substantial risk of serious harm" and "that prison officials acted or failed to act with deliberate indifference to that risk."[63] Deliberate indifference requires a showing that the prison official

---

[59] *Farmer*, 511 U.S. at 843.
[60] *See Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001); *Domino v. Texas Dep't. of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).
[61] *See Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) ("To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety." (cleaned up)).
[62] *Damond v. City of Rayville*, 127 F. 4th 935, 940 (5th Cir. 2025) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)).
[63] *Id.*

(a) knows that inmates face a substantial risk of serious bodily harm and (b) disregards that risk by failing to take reasonable measures to abate it.[64]

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."[65]  To meet this "extremely high standard," the plaintiff must allege that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[66]

Plaintiff alleges that, once Capt. Powell discovered Plaintiff had been injured, he brought him to the medical unit where the nurse administered immediate medical care (i.e., cleaned and dressed the wound).  Although the nurse indicated that he would need to see the doctor later in the morning and go to a hospital for stiches, Plaintiff was transferred shortly thereafter.  Plaintiff has not alleged that Sheriff Hutson was at the facility or had any role in his medical care.  As such, Plaintiff has not alleged sufficient facts to assert a claim that any named defendant acted within deliberate indifference to his medical needs.

## IV.   AVAILABILITY OF AMENDMENT

The court should freely give leave [to amend a pleading] when justice so requires."[67]  Unless it is clear that the plaintiff is unwilling or unable to amend in a manner that will avoid dismissal, the court errs in not providing a *pro se* plaintiff with at least one opportunity to cure pleading deficiencies before dismissing.[68]  When conducting a frivolousness review, the court may

---

[64] *Id.* (citation omitted).
[65] *Id.*
[66] *Id.* (quoting *Domino*, 239 F.3d at 756).
[67] FED. R. CIV. P. 15(a)(2); *see F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) (noting that Rule 15(a) "evinces a strong bias in favor of granting . . .leave to amend a pleading").
[68] *Dierlam v. Trump*, 977 F.3d 471, 478 n.44 (5th Cir. 2020) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)); *see also Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011) (cleaned

offer a *pro se* litigant an opportunity to amend his complaint before it is dismissed if the court finds that he has not had the opportunity to state his "best case."[69]

Because Plaintiff has not previously been apprised of the insufficiency of his complaint,[70] justice requires that he be allowed an opportunity to amend his official capacity claim against Sheriff Hutson to articulate the specific policy or custom that allegedly caused the deprivation of his constitutional rights as well as facts establishing how any particular training program is defective or insufficient, as necessary to state an official capacity claim under §1983. It is not necessary, however, to afford Plaintiff an opportunity to amend his claims against Sheriff Hutson in her individual capacity as same would be futile.[71]

## V.  **CONCLUSION**

Even under the broadest reading of his claims,[72] Plaintiff fails to state an individual capacity claim against Sheriff Hutson. Because any attempt to amend those claims would be futile, they should be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1) as frivolous and otherwise for failure to state a claim for which relief can be granted, without leave to amend.

---

up); *see also Brown v. Brown*, 842 F. App'x 948, 949 (5th Cir. 2021) ("Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend.") (quoting *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020) (internal quotation marks and citation omitted).
[69] *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998).
[70] *Wiggins v. Louisiana St. Univ.-Health Care Services Division*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citing *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008)).
[71] *See, e.g., Smith v. Terrebonne Par. Crim. Just. Complex*, No. 14-2207, 2014 WL 5780696, at *3 (E.D. La. Nov. 4, 2014) (holding that amendment not required because it was clear that underlying claim was frivolous and/or failed to state a claim on which relief may be granted); *see also Martzen v. McLane*, 764 F. App'x 402, 403 (5th Cir. 2019) (noting that a plaintiff need not be given an opportunity to amend if he has already alleged his best case and any further amendment would not state a valid § 1983 claim).
[72] The court must "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'" *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

Plaintiff's § 1983 official capacity claim against Sheriff Hutson should likewise be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1) as frivolous and otherwise for failure to state a claim for which relief can be granted. Plaintiff, however, should be granted 21 days within which to file an Amended Complaint as to the official capacity claim only, identifying the specific policy or custom that allegedly caused the deprivation of his constitutional rights as well as facts establishing how any particular training program is defective or insufficient as necessary to state a cause of action.

Should Plaintiff fail to file an Amended Complaint that properly sets forth the necessary facts to support an official capacity claim against Sheriff Hutson, including identifying the specific policy or custom at issue as well as how any particular training program is defective or insufficient as required to state a § 1983 claim, then the official capacity claim may likewise be dismissed with prejudice as frivolous and for failure to state a claim for which relief and be granted pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1).

## VI. RECOMMENDATIONS

Accordingly, for the foregoing reasons,

**IT IS RECOMMENDED** that plaintiff Bobby Parker's claims against defendant Sheriff Hutson in her individual capacity should be dismissed with prejudice under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1), without leave to amend.

**IT IS FURTHER RECOMMENDED** that Parker be granted leave to file, within 21 days, an Amended Complaint against defendant Sheriff Hutson in her official capacity identifying any specific policy or custom that allegedly caused the deprivation of his constitutional rights as well as facts establishing how any particular training program is defective or insufficient as necessary to state a cause of action, as necessary to state a § 1983 official capacity claim. In the event that

Plaintiff fails to file an Amended Complaint within 21 days, then his official capacity claims against Sheriff Hutson should likewise be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1) as frivolous and otherwise for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[73]

New Orleans, Louisiana, this __24th__ day of September, 2025.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[73] *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).